

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

Rod J. Rosenstein
United States Attorney

David Metcalf
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4823
MAIN: 410-209-4800
FAX: 410-962-0716
TTY/TDD: 410-725-1809

June 13, 2016

Andrew Szekely, Esquire
Assistant Federal Public Defender
100 South Charles Street, Tower II, 9th Floor
Baltimore, MD 21201

    Re:    United States v. Daryl Davis, RDB-16-092

Dear Mr. Szekely:

This letter confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by July 6, 2016, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

1.    The Defendant agrees to plead guilty to possessing a firearm after having been convicted of a crime punishable by a term of imprisonment of more than one year, in violation of 18 U.S.C. § 922(g). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offense

2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

At or about the time charged in the Indictment, in the District of Maryland:

1

    A.     The Defendant knowingly possessed a firearm, as that term is defined in 18 U.S.C. § 921(a)(3);

    B.     That the defendant had a prior conviction for a crime punishable by a term of imprisonment exceeding one year; and

    C.     That the firearm affected interstate commerce because it was manufactured outside of the State of Maryland.

## Penalties

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: 10 years imprisonment, followed by a term of supervised release of up to three years, and a fine of $250,000. In the event the Defendant is determined to have three previous convictions by any court referred to in 18 U.S.C. § 922(g)(1) for a violent felony or serious drug offense, or both, committed on occasions different from one another, the Defendant shall be fined under Title 18 and sentenced to a maximum term of life imprisonment and a mandatory minimum term of 15 years imprisonment, a five-year term of supervised release, and a fine of $250,000 and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, the Defendant with respect to the conviction under section 922(g). In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked—even on the last day of the term—and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

2

a. If the Defendant had pled not guilty and persisted in that plea, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e. If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g. If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status. The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

5. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551 through 3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual Stipulation

6. The undersigned parties stipulate and agree that if this case had proceeded to trial, the Government would have proven the facts set forth in Attachment "A" beyond a reasonable doubt. The undersigned parties also stipulate and agree that the facts set forth in Attachment "A" do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

### Advisory Guideline Stipulation

7. This Office and the Defendant stipulate and agree that the base offense level is 20 pursuant to U.S.S.G. § 2K2.1(a)(4).

8. The Defendant agrees that he is subject to an adjusted offense level under U.S.S.G. § 3C1.1 for obstructing or impeding the administration of justice. Pursuant to U.S.S.G. § 3E1.1 cmt. n.4, therefore, the Defendant concedes that he is not entitled to any acceptance of responsibility adjustment under U.S.S.G. § 3E1.1(a) or § 3E1.1(b) based upon the Defendant's obstruction of justice in his investigation and prosecution.

**The final base offense level is therefore 22.**

9. The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income. The Defendant may argue over-representation of criminal history under U.S.S.G. § 4A1.3(b), and the Government may oppose.

10. This Office and the Defendant agree that other than with respect to the calculation of criminal history, and the calculation of the advisory guidelines range discussed elsewhere, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Rule 11(c)(1)(C) Plea

11. The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **51-63 months incarceration** in the custody of the Federal Bureau of Prisons is the appropriate disposition of this case pursuant to 18 U.S.C. § 3553. This agreement does not affect the Court's discretion to impose any lawful term of supervised release or fine or to set any lawful conditions of probation or supervised release. In the event that the Court rejects this plea agreement, either party may elect to declare the agreement null and void. Should the Defendant so elect, he will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5).

## Obligations of the United States Attorney's Office

12. At the time of sentencing, this Office will recommend a sentence between 51 and 63 months incarceration in the custody of the Bureau of Prisons.

13. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

14. Pursuant to the Defendant's factual stipulation that he obstructed justice, this Office will not bring any additional or separate charges for the conduct underlying that sentencing enhancement provided that the Defendant does not engage in any further obstructive conduct as of the date of this offer.

## Waiver of Appeal

15. In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

b. The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, order of forfeiture, order of restitution, and term or condition of supervised release).

c. Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

16. The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Forfeiture

17. The Defendant understands and agrees that as a result of his guilty plea, he will not be permitted to own, possess, or use a firearm. He forfeits all right, title, and interest in the following: a H&R, Model 949, .22 Long Rifle caliber, revolver, serial number AC7061, and ammunition.

United States v. Daryl Davis (16-cr-092-RDB)
June 13, 2016

## Court Not a Party

18.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, sentence is imposed by the Court, and the Court is under no obligation to accept this plea agreement. The Defendant understands that neither this Office, his attorney, nor the Court can make a binding prediction or promise that the Court will accept this agreement. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,
Rod J. Rosenstein
United States Attorney

By: _____
David Metcalf
Assistant United States Attorney

United States v. Daryl Davis (16-cr-092-RDB)
June 13, 2016

     I have read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual Stipulation set forth in Attachment "A," and the Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/12/16　　　　　　　　　　　　　　　　　　　　　　　　*Daryl Davis*
Date　　　　　　　　　　　　　　　　　　　　　　　　　Daryl Davis

     I am Mr. Davis's attorney. I have carefully reviewed every part of this agreement with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

7/12/16　　　　　　　　　　　　　　　　　　　　　　　　*Andrew Szekely*
Date　　　　　　　　　　　　　　　　　　　　　　　　　Andrew Szekely, Esquire

United States v. Daryl Davis

Criminal Case No. RDB-16-092

# ATTACHMENT "A"

The Defendant hereby stipulates and agrees to the following facts with respect to the offense of conviction and all relevant offense level adjustments.

## OFFENSE OF CONVICTION

1. On October 5, 2015, Baltimore City Police Department ("BPD") Officers executed a search warrant at the residence of 3440 Mayfield Avenue, Second Floor Apartment, Baltimore, Maryland 21213 (the "Mayfield Avenue Apartment") on the basis of probable cause that a male by the alias of "Twin" was distributing narcotics from and within the residence. Upon entry into the residence, the BPD Officers saw and apprehended the lone occupant, the Defendant, Daryl Davis, and secured him in the kitchen. After advising the Defendant of his *Miranda* rights, the BPD officers asked the Defendant if there were any firearms in the apartment. The Defendant stated that he had a firearm in his bedroom, underneath the mattress.

2. BPD Officers subsequently recovered an H&R Model 949, .22 Long Rifle caliber revolver in a black bag underneath the mattress in the Defendant's bedroom. Ammunition was also recovered in the same bag as the firearm, as well as in a shoebox in the closet, totaling thirty-seven .22 caliber cartridges. BPD Officers also recovered various items of illicit drugs throughout the bedroom, specifically (1) narcotics located inside the compartment of a cell phone; (2) narcotics in a "Peanuts" container; (3) and additional controlled substances in a cup on the table adjacent to the bed.[1] Officers also recovered drug paraphernalia in the corner of the bedroom, as well as mail addressed to the Defendant.

3. The Defendant admits that he did knowingly possess the firearm.

4. The Defendant also admits that he was the sole owner, possessor, and custodian of that firearm, as well as the controlled substances, recovered in the residence at the time of his arrest on October 5, 2015. No other person who lived, resided, or had access to the apartment owned, possessed, or controlled the contraband found there on October 5, 2015.

5. The firearm was examined and found to be operable and capable of expelling a projectile by use of an explosive, and therefore meets the definition of a firearm under relevant federal law. The weapon was manufactured outside the state of Maryland, and therefore traveled in and affected interstate commerce prior to its recovery on October 5, 2015. The defendant, moreover, is prohibited from possession such a firearm by virtue of a previous conviction for a crime punishable by more than one year for which his civil rights have not been restored.

---

[1] In all, BPD Officers recovered controlled substances in the following amounts: (1) Cocaine (3.89 grams); (2) Heroine (1.18 grams); (3) Ethylone (1.27 grams); (4) Marihuana (4.8 grams).

## OBSTRUCTION OF JUSTICE ENHANCEMENT

6. The Defendant further admits to engaging in obstruction of justice throughout the investigation of the conduct underlying the count of conviction.

   a. In the months after his arrest, the Defendant placed jail calls to Alisha Webb—the cohabitant of the Mayfield Avenue Apartment with whom the Defendant had a romantic relationship at all relevant periods of the arrest and investigation. On several of those jail calls, Davis instructed Webb to lie to investigators and potential witnesses about the inhabitants of the Mayfield Avenue Apartment and the circumstances of the search of the apartment on October 5, 2015.

   b. From October 6, 2015 through February 26, 2016, through communications to persons known and unknown, the Defendant and Ms. Webb conspired to falsely inculpate her former boyfriend, Victim #1, throughout the course of the investigation of the contraband recovered in the Mayfield Avenue Apartment. Specifically, Ms. Webb and the Defendant agreed that she would falsely state to investigators that (i) Victim #1 was a co-resident of the Mayfield Avenue Apartment; and (ii) Victim #1 was the actual owner, possessor, and custodian of the contraband found therein.

   c. The Defendant and Ms. Webb entered this conspiracy to falsely exculpate the Defendant, as both individuals knew that at the time of the arrest, Victim #1 never lived at the Mayfield Avenue Apartment and never owned, possessed, or controlled any firearm or controlled substances recovered therein.

   d. The Defendant also attempted to listen to, record and influence the Grand Jury testimony of Alisha Webb on February 25, 2016, by placing jail calls to Ms. Webb's cellular phone during the scheduled time of her testimony and having Ms. Webb place the phone on speakerphone. By virtue of calls placed after the Grand Jury testimony, the Defendant was aware that Ms. Webb indeed lied under oath as to the owner, possessor, and custodian of the contraband found in the Mayfield Avenue Apartment.

7. The Defendant did not force or threaten Ms. Webb to lie at any point during the investigation into the underlying count of conviction.

I have read this Attachment "A" and carefully reviewed every part of it with my attorney. I understand it, and voluntarily agree and admit to the facts set forth therein are true.

7/12/16

Date

Daryl Davis

I am Mr. Davis's attorney. I have carefully reviewed every part of this Attachment "A" with him. He advises me that he understands and accepts its statements of the facts as true. To my knowledge, his decision to admit to the facts stated therein is an informed and voluntary one.

7/12/16

Date

Andrew Szekely, Esquire